Good morning. May it please the court, I'm Jesse Feiner, appointed for Mr. Parisien, bringing the case before you on the issue of what is the correct analytical framework for the type of problem that arises from this plea agreement. In this particular case, the circuit has analytical frameworks available for the types of controversies that arise from plea agreements. There is an analytical framework for a breach. This is not a breach. There is an analytical framework for ambiguity. This is not, in our opinion, an ambiguity problem. There is an analytical framework for Sixth Amendment ineffective assistance of counsel. That may be an element in my performance because of an error I made during the plea session, but it is not the basis that was argued at sentencing. It is not the basis for the argument to the court this date. The argument is a due process argument, and that analytical framework guides the direction for the court's response. So, counsel, if we were to look at this as a contract issue, there was a mutual mistake of law? Yes. So if you have that circumstance with the contract explicitly providing that the judge was not bound by the party's agreement, where does that leave us in terms of contract enforcement? Contract enforcement, I don't think it provides the remedy in this case, Your Honor. I think in Brown v. Poole, the court was clear that contract and due process jointly bind the analysis. But what does the mistake of counsel have to do with it when it was up to the judge to decide? It is up to the judge to decide, and the judge is bound by Ninth Circuit law as to follow a particular framework. The framework that applies, Your Honor, is to determine the intent of the parties. No, the judge is free to sentence as he will. You see, the judge is not bound by the parties. No. So why the party's mistake is irrelevant? Well, those are two different statements. I do agree with the first. The judge is not bound by the parties, Your Honor, but the judge clearly has to take the party's intent into consideration. That was simple. But in sentencing, your client knew that the maximum sentence was life in prison, and he knew that it was up to the judge to decide what the sentence would be. So where's the problem? The problem is, is that he came to his plea agreement misadvised by counsel and misadvised by the United States attorneys, such that, such that, the parties entered an agreement that had no reflection of one of the realities of the sentencing guidelines. Now, when that occurs, the U.S. Supreme Court has said in Santabello that we determine the party's reasonable understanding. That's U.S. Supreme Court precedent. We also know from De La Fuente, this Court's precedent, that the parties are ---- But counsel, even if the parties had agreed to twice the sentence, the judge wouldn't have been bound by it, right? The judge is not bound by the party's agreement. So what ---- I guess I'm having the same difficulty perhaps as my colleagues. If the judge is not bound by the agreement, it's hard for me to see where the prejudice lies in the agreement. I mean, presumably, the remedy for this would be for him to go to trial, because the plea would be presumably not voluntary or not knowing. But I don't see anything in this record demonstrating that he would have gone to trial instead of pleading. That's correct. And I disagree with the Court about the remedy being to do a rescission of the plea. You've rewritten 100 years of U.S. Supreme Court rulings if you do that. The Court has been clear, and this circuit has been clear. If a plea is not knowing and voluntary, we do ---- we don't ---- Rescission is one remedy. Right. If it is the only remedy, Your Honors, then my time here is really wasting your time. But that's not the rule. That's never been the rule. From Santabello on down, three cases in this Court, those being De La Fuente, Buckley v. Terhune, and recently the Supreme Court in Puckett. We do not apply a strict contract rule here. We have three possible remedies. Rescission is one of them. Specific performance is one of them. I don't make these things up. Specific performance is not binding on the Court. If the government had breached the plea agreement, then specific performance would be available. But you cannot bind the Court to specifically perform a plea agreement. It has never been interpreted that way, Your Honor. Right. Specific ---- no, I disagree. Specific performance is available if the government breaches. And the government didn't breach it. Does not breach. I do not argue breach. I wasn't happy with how things unfolded in the substitute counsel, but I do not see a formal breach. Let me explain why this is a problem. The Court took a literalist view of that plea agreement. Now, that plea agreement determined, and this is uncontested by the parties, by the government and myself, that the purpose of that plea agreement was to remove recidivist penalties. And we did. We took the statutory recidivist penalty and removed it, as was our intent. We both determined, independently and in error, that the guideline recidivist penalty did not apply. We were both wrong. And the Court is not bound by your error. That's the problem I'm having with your argument. You're saying that the Court has to live or die by the interpretation of the law that the parties agree to. That can't be right. Santabello, the parties' reasonable understanding is the fulcrum on which a court determines what the terms of a plea agreement are. You're rewriting Santabello. But the terms of this plea agreement specified and explained to your client that the Court could sentence however it wanted. So that's the key portion of the plea agreement that's not being rewritten. I do agree with that. But you have, by doing this, you have moved into a literalism that simply sidesteps 88 years of law. The literalism, yes, we did not put a term into the plea agreement because we did neither of us think of it. And, Your Honors, I apologize for that. I caused this problem. I'm trying to fix it. I don't stand here arrogantly. I made this mess. But I want to be clear with the Court that Santabello, Puckett, Brown. If that turns out to be your client's claim, he'll have to bring a later collateral proceeding. Oh, I understand. And he has that potential remedy. But as I review the decisions in this area, none of them say, none of them say take a literalist interpretation of the plea agreement. Without exception, they say, first of all, what were the party's intent? Now, that may be an analysis. So if the party's intent here was that your client received six months because everybody really liked him, I mean, does the Court have to do that? Why does it matter when there's a term that says the judge will decide for sure what the sentence will be? Why does any of that matter? It does matter because the Santabello term is the party's reasonable understanding. That's how it's briefed and that's how I argue it. And if it was unreasonable? Simply unreasonable. Well, why wasn't this unreasonable? Because the court below didn't even reflect on this argument. The court rejected it out of hand. Did not determine the party's expectations or understanding, reasonable or not. He short-circuited the analysis. The analysis required by this court was short-circuited. What he did instead is he took a literalist view and said, well, it seems to me that I read this plea agreement, here's what it says. It doesn't mention career offender. So you guys, out of luck. Now, the out-of-luck argument is the correct result in a Sixth Amendment in effective assistance of counsel. That's the Zwieber holding. The government relies on it exclusively. But, counsel, Santabello involved a situation where the claim was made that the prosecutor did not fulfill the promises in the plea agreement. That's correct. We have a different scenario here. I agree. And Santabello does not say that rescission is only available in some instances and specific performance in others. There has been no case that I can find on all fours. It simply does not generally happen that two, I would like to say, relatively experienced counsel flub it so badly. But we did. And here's the prejudice, because you want to know what differences it makes. Mr. Parisian gave the government everything the government asked for. And the government gave Mr. Parisian everything Mr. Parisian asked for. Literally. You're asking the court to do something different. Correct. But the government performed according to what it agreed to do. I do not think that is accurate. The government performed on the literal words of the plea agreement. And literalism has never, never been the test. The test is what were the parties determining. Mr. Ahmed will probably come to the podium and tell you we were avoiding recidivist penalties. That was our purpose. That's what the government agreed to do. The government agreed to represent to the court that the recidivism provisions did not apply. Yes. And the government did that. Yes. The government did that, which is why I'm not claiming a breach. But they were wrong, and I was wrong, when we pled this man. Now, he went through an extensive pretrial interview. He could not return to the status quo ante. Pulling his plea agreement is an empty remedy. If you see that he was, that he gave up something in exchange for his plea agreement, he got back nothing. Counsel, we understand your argument, and you've used up all your time. I see that. Thank you. Thank you. Good morning, Your Honors. My name is Ani Ahmed. I'm with the Eastern District of Washington U.S. Attorney's Office. In this case, the parties had a very clear plea agreement. It was not ambiguous. The parties did discuss the defendant's offense level and did not believe he was a career offender based on a 1994 conviction. It is in the record. The discussion was as to the age of the conviction, as to how much he was sentenced to, Mr. Creason, and that was about 180 days or a little less than 180 days. The parties did not believe that was a three-point offense and did not believe that would count as a career offender status. So were you the attorney who was assigned to the case? I was, yes, Your Honor. And Mr. Fine and I, as reflected in the record, had several discussions about whether the defendant was a career offender. At no time did the United States make any promises, any reliance that the defendant could have, but it was clear and it was made to the court, and the United States presented a united front to the court and explained to the court that based on the guidelines that the defense counsel and myself had talked about, we believed he would be between 11 and 12 years with a final offense level of about 29, criminal category 4. That was reflected in my sentencing memorandum to the court. That was reflected in the first sentencing hearing that I was present at, which I told the district court judge very explicitly that, and that's on page 90 of the excerpt of the record, excuse me, page 93, that please impose what's in the plea agreement. The court found independently that the defendant was, in fact, a career offender. Interestingly, the court did not sentence him to a guideline range of what he would have received as a career offender. The court sentenced him to 162 months. In fact, his low end guideline range as a career offender was 262 months. So neither party challenges the district court's determination that he's a career offender. You don't say that that was error? No, Your Honor. What we understood and what we read in the pre-sentence investigation report was while the defendant received a sentence of less than 180 days, an actual time served, he was actually sentenced to three years. And I can't go back and tell the court exactly what I was thinking. I can tell you that I was wrong and Mr. Feiner was wrong, and we both, I believe, looked at what his criminal record was for what he had received, actually, in terms of a sentence. We never disputed with the court that he was a career offender. We simply laid out for the court that this is what we had in mind in terms of what we talked about. But as far as any promises or inducements or anything to reflect that the government promised that he would receive a sentence is simply not supported by what's in the plea agreement. As counsel said, we're both experienced lawyers. We've done many pleas. Those provisions in the plea agreement are very explicit. Number one, that the court would determine the sentence, that the court would determine the guidelines, that the court would determine the criminal history after reviewing the pre-sentence investigation report. And the reason those provisions are put in there is simply based on the fact that sometimes when you look at a criminal history report, you could miss something. You could be mistaken about something. That's why you have the investigation to flesh out everything that the judge needs to make the sentencing determination. That is correct. And that's why a PSIR is completed because in the world of reality, it's simply based on more information in terms of criminal history than we even have in terms of the United States. And what I mean by that is sometimes you could miss a careless or reckless driving that may count as a point, for example, and it could bump up the person's criminal history. So there's a very clear understanding based on the plea agreement that we could be incorrect. I don't dispute with counsel that we had an understanding that he was not a career offender. We analyzed that conviction. We knew about that conviction, but we were incorrect about it. What the court determined was that the court was not bound by the plea agreement. The court did ask at the first sentencing hearing whether defense counsel was interested in withdrawing the plea. Defense counsel stated no, that I can't go back to a position. I would indicate to the court this. Here's what the facts are. The defendant never qualified for any substantial assistance. The defendant had a debriefing because of the very fact that there had to be a reason to withdraw the 851. Counsel discussed absolutely the fact that due to a plea, we wouldn't have a 20-year mandatory minimum. That was reflected in the plea agreement. I did exactly that. I withdrew the 851. I argued to the court, I submitted to the court not to sentence him in terms of career offender. But the court ultimately decides, and that's what's reflected in the plea agreement, Your Honor. What is your response to opposing counsel's reliance on Santabello for the proposition that you don't literally interpret the plea agreement, but you look at the intent of the parties and that should be specifically performed? Your Honor, I believe in that case, the court indicated there's an expectation before you enter the plea. In this case, what could that expectation be based on other than a discussion between counsel as to what we believed the defendant would be, whether he'd be a career offender or not. Ultimately, the expectation was that the court decides, and counsel knew that because it was explicitly in the plea. Unlike all the cases cited in defense brief, I would indicate that there was never a point that the United States failed to step up to the court and tell the court exactly what the parties had contemplated at the time we entered the plea. Many of these cases talk about, for example, that once the court sentenced the defendant or decided what the person's offense level was, that the U.S. attorney just stepped up and said, well, you've already made up your mind, Your Honor, so we'll go with the court's recommendation. Well, that's not what you agreed to. That's not what you talked about. And I think that's being disingenuous with the court. Even if you don't agree with the court, I think you ought to tell the court what the parties thought about. Certainly the court's not bound by it, but it could impress the court. It could affect the court's decision, if that's the case. In this case, the court knew what the parties talked about specifically and rejected it and stated, I will sentence based on the offense levels that I determined are accurate. I will sentence based on the 3553 factors that I consider. And he considered all of it and sentenced them to well below the career offender guidelines, over 100 months. Unless there are any questions by the court, I'll sit down. Judge Norton, anything? No. Thank you. Mr. Finder, you used your time, but we'll give you a minute for rebuttal if you'd like it. Thank you, Your Honor. In Poole, the court determined that if an individual defendant does not receive the expected benefit of the bargain, the court will have to review that. And that's all we've asked for. Poole makes it plain. It may be the law, but if the defendant has been led to expect a result different than what is feasible for the government to provide, the defendant has that opportunity for the court to take that into account. The court here did not. The court here went strictly to the guidelines with the career offender in place. And we think that is a rewriting of the holding of Poole and a rewriting of the holding in Santabello, Pocket, and De La Fuente. This is not an ineffective assistance under Zwieber. It's a due process argument. I appreciate the court's attention. Thank you. Thank you, counsel. The case just argued is submitted, and we appreciate the arguments from both counsel. We will, just for planning purposes, hear two more cases which are related to each other, and then we'll take a break. So we can stay alert. Our next argued case is Miller v. De La Fuente.
judges: Noonan, Graber, Rawlinson